## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CISCO SYSTEMS, INC., a California corporation,<br>170 W. Tasman Drive<br>San Jose, CA 95134,<br><br>and<br><br>CISCO TECHNOLOGY, INC., a California corporation,<br>170 W. Tasman Drive<br>San Jose, CA 95134,<br><br>        Plaintiffs,<br><br>v.<br><br>TECH DATA RESELLER LIMITED LIABILITY COMPANY, in its own right and d/b/a CELIK and/or CALIK, New Jersey corporations,<br>164 Brighton Road<br>Clifton, NJ 07012<br><br>and<br><br>NCOM LIMITED, a New Jersey corporation,<br>164 Brighton Road<br>Clifton, NJ 07012,<br><br>and<br><br>RAMAZAN TURK, a/k/a TIM TURK, an individual,<br>16 Renaissance Drive #1<br>Clifton, NJ 07013<br><br>and | Civil Action No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL, FOR:**<br><br>**1. FEDERAL TRADEMARK INFRINGEMENT, 15 U.S.C. § 1141(1)(a);**<br>**2. FEDERAL TRADEMARK COUNTERFEITING, 15 U.S.C. § 1114(1)(b);**<br>**3. FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125(a);**<br>**4. IMPORTATION OF GOODS BEARING INFRINGING MARKS OR NAMES, 15 U.S.C. § 1124;**<br>**5. NEW JERSEY TRADEMARK COUNTERFEITING, N.J.S.A. § 56.3-13.16)**<br>**6. NEW JERSEY UNFAIR COMPETITION, N.J.S.A. § 56:4-1 et seq.;**<br>**7. COMMON LAW TRADEMARK INFRINGEMENT;**<br>**8. UNJUST ENRICHMENT.** |

ABC CORPORATIONS 1-25,

   and

DOES 1-50,

         Defendants.

Plaintiffs Cisco Systems, Inc. ("CSI") and Cisco Technology, Inc. ("CTI" and together with CSI, "Cisco" or "Plaintiffs"), hereby complain and allege against Defendants Tech Data Reseller Limited Liability Company, in its own right and d/b/a Celik and/or Calik, NCOM Ltd., Ramazan Turk, ABC Corporations 1-25, inclusive, and Does 1-50, inclusive (collectively "Defendants") as follows:

## I.    INTRODUCTION

1.    This case seeks to stop the willful corporate theft, mass infringement and counterfeiting, and related unfair competition arising from Defendants' importation, attempted importation, and resale of counterfeit Cisco products.  The deliberate and unlawful scheme uncovered by Cisco demonstrates that Defendants attempted to import, likely did import, and sold large quantities of computer networking equipment bearing counterfeit Cisco trademarks.  Cisco brings this lawsuit to stop Defendants' illegal and infringing conduct and to recover for the significant damage it has caused.

2.    The matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

## II.    THE PARTIES

3.    Plaintiff Cisco Systems, Inc., is, and at all times mentioned herein was, a California corporation, with its principal place of business at 170 W. Tasman Drive, San Jose, California 95134.  Plaintiff Cisco Technology, Inc., is, and at all times mentioned herein was, a California corporation with its principal place of business at 170 W. Tasman Drive, San Jose, California 95134.  CTI owns

the trademarks used by CSI in marketing Cisco-branded products.

4.     Upon information and belief, Defendant Tech Data Reseller Limited Liability Company ("TDR") is, and at all relevant times was, a New Jersey corporation, located at 164 Brighton Road, Clifton, New Jersey 07012.  During certain time periods relevant to this matter, TDR did business as Celik or Calik ("Celik").

5.     Upon information and belief, Defendant NCOM Limited ("NCOM") is, and at all relevant times, was a New Jersey corporation, located at 164 Brighton Road, Clifton, New Jersey 07012.

6.     Upon information and belief, Defendant Ramazan Turk, also known as Tim Turk ("Turk"), is an officer and/or owner of TDR and NCOM, residing at 16 Renaissance Drive #1, Clifton, New Jersey 07013, who knowingly contributed to the unlawful activities described below.

7.     Upon information and belief, Defendants ABC Corporations 1-25 are as of yet unidentified entities that own or are owned by or share common ownership of Defendants TDR, Celik and/or NCOM.

8.     Upon information and belief, Defendants Does 1-50 are as of yet unidentified people that own or otherwise control

9.     Cisco is currently unaware of the true names and capacities of ABC Corporations, 1 through 25, inclusive, or of Does 1 through 50, inclusive, whether individual, corporate, associate, or otherwise (collectively, ABC Corporations 1 through 25 and Does 1 through 50 are "Doe Defendants").  Due to the surreptitious nature of Defendants' actions, the identities of the Doe Defendants have been concealed from Cisco, preventing Cisco from identifying them by name.  After discovery, which is necessary to ascertain the true names and capacities of the Doe Defendants, Cisco will amend this Complaint to show the true names and capacities of them and allege the necessary identifying details.

10.    Upon information and belief, Cisco alleges that each of the Defendants designated herein as a Doe Defendant is legally responsible, in some manner, for the events and happenings herein referred to, and legally caused damages to Cisco as herein alleged.

11.    Upon information and belief, Cisco alleges that Defendant Turk is a citizen or resident of the State of New Jersey, and/or is doing business in the State of New Jersey, and/or participated in or undertook obligations or rights arising out of the subject events and happenings herein referred to, engaged in actions or omissions, either intentional or negligent, regarding the subject events and happenings herein referred to, and/or benefited unjustly from the efforts, work and goods of Cisco.

12.    At all times relevant to this action, each Defendant, including those fictitiously named Doe Defendants, was the agent, servant, employee, partner, joint venturer, representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the other Defendants and was acting within the scope of that agency, service, employment, partnership, joint venture, representation, affiliation, or conspiracy, and each is legally responsible for the acts and omissions of the others.

### III.    JURISDICTION

13.    This is an Action for violations of the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act").  This Court has original subject matter jurisdiction over this Action pursuant to the provision of the Lanham Act, 15 U.S.C. § 1121, as well as under 28 U.S.C. §§ 1331 and 1338(a) and (b).

14.    This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367, because these claims are so related to Cisco's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

15.    This Court has personal jurisdiction over Defendants, who are

residents of this district, have engaged in business activities in this district, misled consumers in this district, directed business activities at this district, and have committed tortious acts with knowledge that the effects of their acts would be felt by Cisco in this district.

## IV.   VENUE

16.   Venue is proper in this district, pursuant to 28 U.S.C. § 1400(a), because Defendants "may be found" here.   Venue is also proper in this district, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Cisco's claims occurred in this judicial district, and a substantial part of the property that is the subject of the action is situated in this district.

## V.   FACTUAL ALLEGATIONS RELEVANT TO CISCO, ITS INTELLECTUAL PROPERTY, AND DEFENDANT'S UNLAWFUL SCHEME

### A.   Cisco's Business And History

17.   Founded in 1984, Cisco is the worldwide leader in developing, implementing, and providing the technologies behind networking, communications, and information technology products and services.   Cisco develops and provides a broad range of networking products and services that enable seamless communication among individuals, businesses, public institutions, government agencies, and service providers.   Specifically, the thousands of engineers who work at Cisco develop and provide networking and communications hardware, software, and services that utilize cutting-edge technologies to transport data, voice, and video within buildings, across cities and campuses, and around the world.

18.   Since its founding, Cisco has pioneered many of the important technologies that created and enabled global interconnectivity.   During the past three decades, Cisco has invested billions of dollars, and the time and dedication of

thousands of its engineers, in the research, development, and sale of industry leading networking and communications products and services.

19.     Cisco has also built up tremendous goodwill and brand reputation among consumers, including corporate and government consumers, through significant investment in advertising, promoting, and delivering products, software, and services of the highest quality under Cisco's trade name and the family of Cisco-related trademarks (the "Cisco Marks").  Cisco has used the family of Cisco Marks to identify goods and services as being genuine and authorized, and therefore, the Cisco Marks are well-recognized signifiers of Cisco's best-in-class products, software, and services.

### B.    Cisco's Trademarks

20.     CTI owns all rights, title, and interest in the Cisco Marks, which are included on the Principal Register of the U.S. Patent and Trademark Office.  The Cisco Marks are well-known.   They are used in connection with Cisco's networking hardware and software products and services.  They include, but are not limited to, the following marks that are used in interstate commerce:

| Mark | Registration Number | Registration Date |
| --- | --- | --- |
| CISCO | 1,542,339 | June 6, 1989 |
| CISCO SYSTEMS | 1,996,957 | August 27, 1996 |
| CISCO | 2,498,746 | October 16, 2001 |
| CISCO | 3,759,451 | March 9, 2010 |
| CISCO | 3,978,294 | June 14, 2011 |
| CISCO | 4,263,591 | December 25, 2012 |

21.     The Cisco Marks are distinctive, having no meaning outside of their use by Cisco in its course of business operations and in its advertising to distinguish its products and services.  Cisco uses the Cisco Marks to advertise

through a wide variety of media including television, radio, newspapers, magazines, billboards, direct mail, and web sites.

22.   Cisco has attained one of the highest levels of brand recognition among consumers due to its extensive advertising and promotional efforts and its continuous use of its core Cisco Marks for the past three decades.  As a result of Cisco's longstanding and widespread use and promotion of the Cisco Marks, Cisco customers around the globe have come to rely upon the Cisco Marks to identify Cisco's high-quality hardware, software, and services.  Many of Cisco's products are purchased by the U.S. Government, the military, hospitals, and by other industries, in critical and life-essential applications.

23.   Cisco's customers associate Cisco's famous and well-known trademarks, including, among others, CISCO and the Cisco Logo exclusively with Cisco and Cisco's products and services.  When consumers encounter these marks and decide to purchase goods and services identified by these marks, they expect to receive genuine Cisco products that have been produced by Cisco.  Moreover, when consumers purchase products that are advertised as "new factory sealed," they believe that they are purchasing genuine products manufactured by Cisco that have not been tampered with from the time the product was sealed in its shipping packaging.

### C.   Counterfeit And Otherwise Materially Different "Cisco" Products

24.   Counterfeit products that bear markings similar to the Cisco Marks provide customers with a false assurance that the products they have purchased (1) are reliable and conform with Cisco's high standards, (2) come with applicable warranties, (3) can be placed under a Cisco service support contract (*i.e.,* SMARTnet), and (4) come with all of the necessary accessories sold with the product that have been selected and approved by Cisco for use with the product.

25.     In addition to harming Cisco's customers, the sale of counterfeit Cisco products also harms Cisco in many ways.   Among these, counterfeit Cisco products which fail or degrade create the false impression that Cisco products are unreliable, thereby improperly tarnishing Cisco's reputation and causing Cisco to suffer lost sales and future business opportunities.   When customers purchase Cisco-branded parts that are counterfeit and unreliable, their image of Cisco is diminished and Cisco's opportunity to sell genuine, high-quality products to those customers may be lost forever.   As a result, Cisco suffers substantial and irreparable harm to its brand, image, business, and goodwill with the public.   Cisco also suffers lost sales when customers purchase counterfeit products instead of genuine Cisco products.

### D.     Defendants' Infringing Conduct

26.     Defendants, without the consent of Cisco, imported, distributed, transported, sold, or assisted in or caused the sale, importation, distribution, or transportation in interstate commerce of products bearing unauthorized reproductions, copies, counterfeits and colorable imitations of the Cisco Marks.

27.     U.S. Customs and Border Protection ("CBP") has seized approximately 164 Cisco products bearing counterfeit Cisco Marks ("Imported Products") imported by Defendants on eleven separate occasions, from April 2013 through March 2017.   Upon information and belief, because CBP inspects only a small portion of all shipments coming into the United States, Cisco alleges that Defendants successfully imported counterfeit Cisco products that were not interdicted by CBP.   As a result of these seizures and other of Defendants' activity, Cisco has warned Defendants at least six eight different times between 2013 and 2017 that they must stop importing such products.   As evidenced by Defendants' repeated importations of counterfeit products, those warnings were ignored.

28.     A list of the seizures is below:

8

| Seizure Notice # | Importation Date | Quantity | Description | Importer |
|---|---|---|---|---|
| 2013-4197-103033 | April 19, 2013 | 10 | "Cisco NPE-G2" | Tech Data Reseller 164 Brighton Rd. Clifton, NJ 07012 |
| 2013-4771000070-01 | September 2, 2013 | 6 | "Cisco Corded Telephone" | Tim Turk 164 Brighton Road Clifton, NJ 07012 |
| 2013-4196-102708 | September 30, 2013 | 20; 2 | "Cisco Transceivers; Cisco Memory Modules" | TDR Network 164 Brigton Rd. Clifton, NJ 07012 |
| 2014-4197-100006 | October 2, 2013 | 5 | "Cisco High Speed WICs" | Tech Data Reseller 164 Brighton Road Clifton, NJ 07012 |
| 2014-4197-101485 | April 22, 2014 | 10 | "Cisco Units" | Tech Data Resller 164 Brighton Road Clifton, NJ 07012 |
| 2014-4197-101581 | April 30, 2014 | 3 | "Counterfeit switches" | Tech Data Reseller 164 Brighton Rd. Clifton, NJ 07012 |
| 2015-4197-100151-01 | November 10, 2014 | 5 | "Cisco Memory Modules/Cards" | Tech Data Reseller 164 Brighton Road Clifton, NJ 07012 |
| 2015-2095-102712-01 | March 25, 2015 | 2 | "Network switches" | Tim Turk/Ncom Limited c/o 164 Brighton Road Clifton, NJ 07012 |
| 2015-4196-10160901 | June 3, 2015 | 49 | "Cisco Module SFP-10G-LR" | Celik 164 Brighton Road Clifton, NJ 07012 |
| 2015-4196-101758 | June 23, 2015 | 49 | "Modules" | Calik 164 Brighton Rd. Clifton, NJ 07012 |
| 2017-2095-101341-01 | March 1, 2017 | 3 | "Counterfeit Cisco Networking Switches" | NCOM, Ltd. 164 Brighton Road, Suite 3 Clifton, New Jersey |

| | | | | 07012 |
|---|---|---|---|---|

29.    Cisco has sent ~~six~~ eight separate cease and desist letters to the Defendants: August 9, 2013, June 17, 2014, January 13, 2015, July 21, 2015, September 28, 2015, November 13, 2015, March 3, 2017, and October 18, 2017. The substance and purpose of these letters was always the same: Cisco put Defendants on notice that Cisco knew CBP had seized counterfeit products which Defendants had attempted to import; Cisco warned Defendants not to buy from "unauthorized entities" selling cheap Cisco products online; Cisco alerted Defendants of the severe legal consequences of buying and selling counterfeit products; Cisco requested documentation surrounding the purchase of the products; Cisco asked to review any other "Cisco" products in Defendants' inventory which had also been purchased from the same vendor which sold the seized products; and Cisco provided a deadline by which Defendants should respond to the letter.

30.    Defendants often replied to these letters, thus demonstrating that Defendants received them and knew of their infringing conduct.  Defendants vaguely claimed that they "only purchase original products and reject any and all products [they] believe are counterfeit products."  Yet Defendants continued their infringing behavior by continuing to purchase and attempt to import counterfeit products.

31.    At least two of these letters were responded to by Defendants' counsel.  For example, on or about June 30, 2017, counsel for Defendants TDR and Turk stated that those defendants "ha[d] taken measure to curb the import of products that have been deemed counterfeit by customs."  Yet, less than one month later, CBP seized another shipment of imported counterfeit products.

32.    As another example, an investigator engaged by Cisco made a purchase from Defendant TDR on January 11, 2016.  The purchase involved two GLC-LH-SMD modules (serial numbers FNS1906110M and FNS1906110J) and

one WS-C2960X-48FPD-L switch (serial number FCW1902B1M1) (collectively, "the Infringing Products"). The products were advertised by Defendants as "new" and "factory sealed." The products were sent by Defendants from New Jersey to Berkeley, California. Cisco engineers examined the products and their components and determined that the products were counterfeit.

33.     Defendant TDR continues to offer Cisco products for sale through its eBay store, and continues to advertise products as "new." As of November 15, 2017, TDR was offering more than 2,300 Cisco products for sale through its eBay store. For example, TDR offered a "Brand New" and "Factory Sealed" GLC-LH-SMD transceiver for $89. The Global List Price for a GLC-LH-SMD is $995. Thus, TDR is offering a "new" GLC-LH-SMD for 91% off the Cisco list price. As another example, TDR offered a "NEW Sealed in Bag" SFP-10G-LR transceiver for $190.00. The Global List Price for a SFP-10G-LR transceiver is $3,995. Thus, TDR is offering a "new" SFP-10G-LR for 95% off the Cisco list price. The listing of the SFP-10G-LR is particularly troubling because TDR had a shipment of 49 SFP-10G-LR transceivers seized by CBP on or around June 3, 2015 and was put on notice regarding the infringing nature of that attempted importation no later than September 28, 2015 when Cisco send TDR a C&D letter.

## COUNT I

## Federal Trademark Infringement

## (15 U.S.C. § 1114(1)(a))

34.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

35.     The Cisco Marks and the goodwill of the business associated with them are tremendously valuable in the United States and worldwide because they are distinctive and universally associated in the public perception with the highest quality network and communications technology products and services.

36.     Defendants have continually attempted to import products bearing counterfeit Cisco Marks.  Upon information and belief, because CBP inspects only a small portion of all shipments coming into the United States, Cisco alleges that Defendants successfully imported counterfeit Cisco products that were not interdicted by CBP.

37.     Defendants have sold, offered to sell, distributed, and advertised infringing networking hardware product bearing Cisco Marks.

38.     The difference between Defendants' Infringing Products and a genuine Cisco product is material.  Cisco asserts on information and belief that having all original Cisco components and entitlement to warranty services are relevant to consumers' decision about whether, and from whom, to purchase Cisco products.

39.     Defendants' actions have caused, and are likely to continue to cause, confusion, mistake, and deception as to the origin and quality of Defendants' Infringing Products because they are intentionally calculated to mislead the general purchasing public into believing that Defendants' Infringing Products originated from, are associated with, or are otherwise authorized by Cisco.

40.     Upon information and belief, Defendants' actions were committed fraudulently, willfully, and in bad faith, with knowledge of Cisco's exclusive rights to and goodwill in the Cisco Marks, or with willful blindness to the same, and with the intent to cause confusion, to cause mistake and/or to deceive.

41.     Defendants' unauthorized use of the Cisco Marks constitutes trademark infringement of the federally registered Cisco Marks and has caused substantial damage to Cisco and to the reputation and goodwill symbolized by the Cisco Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

42.    Defendants' conduct described above, including the unauthorized use of the Cisco Marks in interstate commerce, have directly and proximately caused and unless enjoined, will continue to cause, substantial, irreparable injury to Cisco and to the business and goodwill represented by the Cisco Marks, which leaves Cisco without an adequate remedy at law.

## COUNT II

### Federal Trademark Counterfeiting

### (15 U.S.C. § 1114(1)(b))

43.    Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

44.    Defendants have on at least eleven separate occasions attempted to import products bearing counterfeit Cisco Marks.  Defendants intended to sell these products in interstate commerce and would have done so absent CBP's seizure of them.  Such sales, if completed, would have directly competed with authorized sales of authentic Cisco products.

45.    Defendants' attempted importation and attempted sale of such products was done without the authorization or consent of Cisco to use the Cisco Marks but with full knowledge of Cisco's notorious prior rights in those marks.

46.    The products Defendants attempted to import and sell reproduce, counterfeit, copy, and colorably imitate the Cisco Marks or display a spurious designation that is identical with, or substantially indistinguishable from, the Cisco Marks.  The products are likely to cause confusion, to cause mistake, or to deceive.

47.    Defendants have sold and distributed the Infringing Products in interstate commerce in direct competition with Cisco and without authorization or consent to use the Cisco Marks but with full knowledge of Cisco's notorious prior rights in those marks.

48.     The Infringing Products reproduced, counterfeited, copied, and colorably imitated the Cisco Marks or displayed a spurious designation that was identical with, or substantially indistinguishable from, the Cisco Marks.  Thus, Defendants have applied reproductions, counterfeits, copies, and colorable imitations of the Cisco Marks to a product used in commerce upon or in connection with the sale or distribution of Defendants' Infringing Products, which is likely to cause confusion, to cause mistake, or to deceive.

49.     Defendants' unauthorized use of the Cisco Marks on or in connection with the Infringing Products was conducted intentionally and with notice and full knowledge that the use was unauthorized by Cisco.  Accordingly, Defendants' actions constitute willful counterfeiting of the Cisco Marks in violation of 15 U.S.C. § 1114(1)(b) and entitling Cisco to treble damages and/or enhanced statutory damages under 15 U.S.C. §§ 1117(b) and (c).

50.     Defendants' conduct has directly and proximately caused Cisco to suffer damage to the valuable Cisco Marks, and other damages in an amount to be proved at trial.  Cisco is left without an adequate remedy at law and will continue to be damaged by Defendants' infringing products unless this Court enjoins Defendants from their fraudulent and deceptive business practices.

## COUNT III

### False Designation of Origin

### (15 U.S.C. § 1125(a))

51.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

52.     Defendants' resale of the Infringing Products was designed to appear identical to a genuine Cisco product and thereby employed the same nature, style, look, and color as a genuine Cisco product.  This unauthorized use of the Cisco Marks is likely to cause confusion, to deceive, and to mislead the consuming

public into believing that there is some affiliation, connection, or association between Defendants and Cisco and is likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, authorization, approval, or affiliation of the Infringing Products.

53.     Defendants' actions, including the unauthorized use of the Cisco Marks in commerce, constitute false designation of origin, false or misleading descriptions of fact, and false or misleading representations of fact, which have caused, and are likely to continue to cause, confusion, mistake, and deception, as to Defendants' association or affiliation with Cisco, or lack thereof, as well as to the origin, source, and sponsorship of the Infringing Products, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.     Defendants' unauthorized and misleading use of the Cisco Marks constitute willful infringement of the Cisco Marks in violation of 15 U.S.C. § 1114(1)(b) and entitling Cisco to treble damages and/or enhanced statutory damages under 15 U.S.C. §§ 1117(b) and (c).

55.     Defendants' actions described above, including its unauthorized and misleading use of the Cisco Marks in commerce have caused, and unless enjoined, will continue to cause, substantial and irreparable injury to Cisco and to the business and goodwill represented by the Cisco Marks, thereby leaving Cisco without an adequate remedy at law.

**COUNT IV**

**Importation of Goods Bearing Infringing Marks or Names**

**(15 U.S.C. § 1124)**

56.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

57.     Defendants imported counterfeit Cisco products bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Cisco Marks in

violation of 15 U.S.C. § 1124.

58.    Defendants have materially contributed to the importation of Counterfeit Cisco products bearing unauthorized reproductions, counterfeit, copies and colorable imitations of the Cisco Marks.

59.    Defendants have realized gains and profits from the importation, or assisting in the importation, of the Counterfeit Cisco Products bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Cisco Marks.

60.    Defendants' actions have caused, and unless enjoined, will continue to cause, substantial and irreparable injury to Cisco, the Cisco Marks, and to the business and goodwill represented by the Cisco Marks such that Cisco has no adequate remedy at law.

**COUNT V**

**New Jersey Trademark Counterfeiting**

**(N.J.S.A. §§ 56.3-13.16)**

61.    Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

62.    Defendants have used, without Cisco's consent, reproductions, counterfeits, copies, or colorable imitations of the Cisco Marks in connection with the sale, distribution, offering for sale, or advertising of the Infringing Products, which are likely to cause confusion, mistake, or to deceive consumers, the public, or the trade as to their source or origin.

63.    The foregoing acts of Defendants constitute trademark counterfeiting in violation of N.J.S.A. § 56.3-13.16.

64.    Upon information and belief, Defendants intend to continue their infringing acts unless restrained by this Court.

65.     Defendants' actions have caused, and unless enjoined, will continue to cause, substantial and irreparable injury to Cisco, the Cisco Marks, and to the business and goodwill represented by the Cisco Marks such that Cisco has no adequate remedy at law.

## COUNT VI

### New Jersey Unfair Competition

### (N.J.S.A. §§ 56:4-1 et seq.)

66.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

67.     The foregoing acts of Defendants constitute unfair competition in violation of N.J.S.A. § 56:4-1.

68.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

69.     Defendants are liable to Cisco for all damages, whether direct or indirect, for the misappropriation of Cisco's name, brand, trademark, reputation and goodwill, which damages are subject to trebling.

70.     Upon information and belief, Defendants intend to continue their infringing acts unless restrained by this Court.

71.     Defendants' actions have caused, and unless enjoined, will continue to cause, substantial and irreparable injury to Cisco, the Cisco Marks, and to the business and goodwill represented by the Cisco Marks such that Cisco has no adequate remedy at law.

## COUNT VII

### Common Law Trademark Infringement

72.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

73.     Cisco owns all rights, title, and interest in and to the Cisco Marks, including all common law rights in such marks.

74.     Defendants, without authorization from Cisco, have used and are continuing to use spurious designations that are identical to, or substantially indistinguishable from, the Cisco Marks.

75.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Defendants' Infringing Products originate from, or are affiliated with, sponsored by, or endorsed by Cisco.

76.     Upon information and belief, Defendants have acted with knowledge of Cisco's ownership of the Cisco Marks and with deliberative intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

77.     Defendants' acts constitute trademark infringement in violation of the common law of the State of New Jersey.

78.     Upon information and belief, Defendants intend to continue their infringing acts unless restrained by this Court.

79.     Defendants' actions have caused, and unless enjoined, will continue to cause, substantial and irreparable injury to Cisco, the Cisco Marks, and to the business and goodwill represented by the Cisco Marks such that Cisco has no adequate remedy at law.

## COUNT VIII
### Unjust Enrichment

80.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

81.     By acting in the foregoing manner Defendants received benefits from their unfair and illegal acts and/or omissions such that to retain the benefits thereof without payment to Cisco would be unjust and contrary to the law of the State of

New Jersey.

## **PRAYER FOR RELIEF**

**WHEREFORE** Cisco respectfully prays for the following relief:

A.      For entry of judgment in favor of Cisco and against Defendants on each of Cisco's claims for relief alleged in this Complaint;

B.      For a preliminary and permanent injunction restraining Defendants, their officers, agents, servants, employees, attorneys, and affiliated companies, its assigns and successors in interest, and those persons in active concert or participation with them, from:

(i) importing, exporting, assisting in the importation or exportation, manufacturing, procuring, distributing, shipping, retailing, selling, offering for sale, marketing, advertising, or trafficking in any products not authorized by Cisco and bearing unauthorized simulations, reproductions, counterfeits, copies, or colorable imitations of the Cisco Marks which are likely to cause confusion, or bearing a design that is of a substantially similar appearance to the Cisco Marks listed in this Complaint;

(ii) From passing off, inducing, or enabling others to sell or pass off as authentic products produced by Cisco or otherwise authorized by Cisco, any product not manufactured by Cisco or produced under the control or supervision of Cisco and approved by Cisco, which uses any of the Cisco Marks listed in this Complaint; and

(iii) From committing any act calculated to cause purchasers to believe that products from Defendants are those sold under the control and supervision of Cisco, or are sponsored, approved, or guaranteed by Cisco, or are connected with and produced under the control or supervision of Cisco;

C.      For a determination that Defendants' acts of trademark infringement constitute cases of willful and exceptional infringement;

D.     For actual damages as a result of Defendants' unlawful conduct, alleged above, as well as any profits that are attributable to the alleged conduct and are not taken into account in computing Cisco's actual damages;

E.     For maximum statutory damages available under the law to the extent Cisco elects statutory damages for any claim for relief;

F.     For punitive damages to the fullest extent available under the law;

G.     For reasonable attorneys' fees to the fullest extent available under the law;

H.     For treble and/or enhanced damages to the fullest extent available under the law;

I.     For full restitution, including restoration of all property unlawfully taken from Cisco, as well as any ill-gotten gains from the resale of Cisco's property;

J.     For prejudgment interest and the costs of prosecuting these claims to the fullest extent available under the law;

K.     For any additional injunctive, specific performance, and/or other provisional remedies, as appropriate; and,

L.     For such other and further relief as the Court deems just and proper.

Dated:  January 22, 2018          **GREENBERG TRAURIG LLP**

*/s/ Joel Max Eads*
Joel Max Eads
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel: 215-988-7800
Fax: 215-988-7801
eadsj@gtlaw.com

Attorneys for Plaintiffs Cisco Systems, Inc.
and Cisco Technology, Inc.

## JURY DEMAND

Pursuant to Civ. L.R. 38.1 and Fed. R. Civ. Proc. 38, Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. hereby demand a trial by a jury on all issues herein so triable.

Dated:  January 22, 2018          **GREENBERG TRAURIG LLP**

*/s/ Joel Max Eads*
Joel Max Eads
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel: 215-988-7800
Fax: 215-988-7801
eadsj@gtlaw.com

Attorneys for Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc.

AO 120 (Rev. 08/10)

| TO:     Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court _____ on the following

☐ Trademarks or   ☐ Patents.   ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT |
|---|---|---|
| PLAINTIFF | | DEFENDANT |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY | |
|---|---|---|
| | ☐ Amendment   ☐ Answer   ☐ Cross Bill   ☐ Other Pleading | |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

Copy 1—Upon initiation of action, mail this copy to Director     Copy 3—Upon termination of action, mail this copy to Director
Copy 2—Upon filing document adding patent(s), mail this copy to Director     Copy 4—Case file copy